IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LISA PITTS, individually, and on behalf of her minor daughters Mo. P., A.P., E.P., Ma. P., Ka. P., and Ke. P.;<br><br>Plaintiffs,<br><br>vs.<br><br>ELKHORN PUBLIC SCHOOL DISTRICT, BARY HABROCK, in his official and individual capacity; CINDY GRAY, in her official and individual capacity; BRITTANY SIDDERS, in her official and individual capacity; LAURINDA PETERSEN, in her official and individual capacity; BRIAN MAHER, in his official and individual capacity; KEVIN POTTER, in his official and individual capacity; CITY OF OMAHA, NEBRASKA DEPARTMENT OF EDUCATION, AMY PARKS, in her official and individual capacity; NANCY ROGIC-GREUFE, in her official and individual capacity; RENEE VOKT, in her official and individual capacity; SCOT RINGENBERG, in his official and individual capacity; CHUCK BURNEY, in his official and individual capacity; JENNIFER SHATEL, in her official and individual capacity; MARK WORTMAN, in his official and individual capacity; ELKHORN PUBLIC SCHOOL BOARD, and UNKNOWN DEFENDANTS,<br><br>Defendants. | **8:25CV669**<br><br>**MEMORANDUM AND ORDER** |

This case involves § 1983 claims against the defendants for allegedly violating Plaintiffs' constitutional rights when imposing and enforcing a Ban and Bar on Ms. Pitts, imposing one-day suspensions on the Pitts Children, and removing Plaintiffs from the October 2024 school board meeting. It comes before the Court on Defendants Chuck

Burney, Elkhorn Public School District, Cindy Gray, Bary Habrock, Amy Parks, Laurinda Petersen, Jennifer Shatel, Brittany Sidders, Renee Vokt, and Mark Wortman's Motion to Dismiss for Failure to State a Claim (Filing No. 10); Defendants City of Omaha and Kevin Potter's Motion to Dismiss for Failure to State a Claim (Filing No. 21); Defendants Elkhorn Public School Board, Scot Ringenberg, and Nancy Rogic-Greufe's Motion to Dismiss for Failure to State a Claim (Filing No. 28); and Plaintiff's Motion to Amend (Filing No. 34). For the reasons stated herein, Plaintiffs' Motion to Amend (Filing No. 34) is denied as futile. Defendants' Motions to Dismiss for Failure to State a Claim (Filing Nos. 10, 21, and 28) are granted. The case is dismissed.

## I. BACKGROUND[1]

Plaintiff Lisa Pitts ("Ms. Pitts") filed this action individually and on behalf of her minor daughters Mo. P., A.P., E.P., Ma. P., Ka. P., and Ke. P. (the "Pitts Children," and collectively with Ms. Pitts, "Plaintiffs"). The Pitts Children attended school in the Elkhorn Public School District in Elkhorn, Nebraska. Defendants include Elkhorn Public Schools, a political subdivision (the "District"); Bary Habrock ("Habrock"), superintendent of Elkhorn Public Schools; Cindy Gray ("Gray"), Associate Superintendent of Elkhorn Public Schools; Brittany Sidders ("Sidders"), principal at Westridge Elementary School in the Elkhorn Public School District; Laurinda Peterson ("Peterson"), principal at Spring Ridge Elementary in the Elkhorn Public School District; Elkhorn Public School Board (the "Board"); current and former school board members Amy Parks ("Parks"), Nancy Rogic-Gruefe ("Rogic-Gruefe"), Renee Vokt ("Vokt"), Scot Ringenberg ("Ringenberg"), Chuck

[1] These facts are taken from Plaintiffs' Amended Complaint, Filing No. 13, which, at this stage of the case, the Court construes as true. *See Arkansas Times LP v. Waldrip as Tr. of Univ. of Arkansas Bd. of Trs.*, 37 F.4th 1386, 1391 (8th Cir. 2022).

Burney ("Burney"), Jennifer Shatel ("Shatel"), and Mark Wortman ("Wortman"); Kevin Potter of the Omaha Police Department ("Potter"); and the City of Omaha ("City") (collectively "Defendants").

Plaintiffs assert six causes of action against all Defendants, alleging various constitutional violations brought pursuant to 42 U.S.C. § 1983. These causes of action are centered around a "Ban and Bar" preventing Ms. Pitts from going on Elkhorn School District Property; one-day suspensions received by the Pitts Children for not wearing masks at school during the COVID-19 pandemic; and their removal from a school board meeting in October 2024.

**A. COVID-19 and the District's Masking Policies**

As a result of the COVID-19 pandemic in 2020 and 2021, schools across Omaha closed or required students to wear masks during the school day. Ms. Pitts objected to her children wearing masks at school, believing masking caused children harm and were ineffective at preventing the spread of COVID-19. After the City of Omaha's mask mandate expired, in the fall of 2021 the Elkhorn school board recommended, but did not require, students to continue wearing masks in school. Students were required to wear a mask if a student in their class tested positive for COVID-19, and the positive tested student was required to quarantine.

Prior to the start of the 2021–2022 school year, on behalf of her minor children, Ms. Pitts requested religious exemptions from wearing masks, which were denied. Ms. Pitts further requested disability exemptions for her children, which were also denied. Ms. Pitts generally alleges she had concerns about her children wearing masks, believing it may affect their learning, social interactions, and speech. Ms. Pitts advised "various

representatives at Elkhorn Public Schools" that she did not want her children wearing masks at school and did not consent to school officials providing her children masks at school.

**B. Implementation of the Ban and Bar on Ms. Pitts**

On September 28, 2021, Ms. Pitts became aware that the school required her child, Mo. P., three years old at the time, to wear a mask in her preschool classroom due to a COVID-19 exposure from another student. On the same day, Ms. Pitts went to Mo. P.'s school to address the situation with Principal Sidders. During the encounter with Principal Sidders, Ms. Pitts objected to Mo. P. wearing a mask. After a conversation with Principal Sidders, Ms. Pitts called the Elkhorn Public School District administration office to speak with Superintendent Habrock, but her call was not transferred to him. Ms. Pitts alleges that subsequent calls to the administrative office went unanswered. A few hours later, Ms. Pitts went to the District administration office to speak to the school superintendent, but no one opened the door. While waiting for someone to open the door, Ms. Pitts knocked on doors and looked into the administration office windows. As a result of her behavior that day, the administrative office called the police and put all schools in the District on lockdown.

In Ms. Pitts's perspective, she did not cause a disturbance. Despite her perception of events, Ms. Pitts was criminally charged with, and convicted of, disturbing the peace for her actions that day. Additionally, due to her behavior, Superintendent Habrock imposed a ban and bar on Ms. Pitts that same day (September 28, 2021).

The Ban and Bar states in part: ". . . you are banned and barred and are not licensed or permitted to enter any Elkhorn School District Properties." The letter further

explained that Ms. Pitts may come onto school property, attend events or school activities so long as she provides at least 24-hour advanced notice and receives written permission from the superintendent or school principal. Ms. Pitts states that as of the filing of this Complaint, almost four years later, the Ban and Bar is still in place. Ms. Pitts alleges there have been "numerous times" when her requests to attend events or activities have been ignored or denied, including pre-school trips with her three-year-old daughter. Ms. Pitts has asked the District to rescind the Ban and Bar and be given the opportunity for a hearing, but her requests have been denied.

**C. Suspensions for Refusing to Mask**

Throughout the 2021–2022 school year, the Pitts Children refused to wear a mask when required, such as after a COVID-19 exposure from a classmate or during a COVID-19 surge. The Pitts Children would receive one-day suspensions on days they refused to wear a mask. In spring 2022 there was a COVID-19 surge, and all students were again required to mask in school. During that time, lasting approximately one month, the Pitts Children were given subsequent one-day suspensions for each day they refused to wear a mask. Plaintiffs were provided with written notice of the one-day suspensions due to their failure to mask. Although Plaintiffs requested hearings regarding the suspensions, such requests were denied.

**D. Ms. Pitts's Convictions for Disturbing the Peace and Trespassing**

On or about August 8, 2022, Ms. Pitts was convicted of disturbing the peace due to her behavior at the Elkhorn elementary school and District offices on September 28, 2021. After Ms. Pitts's trial for disturbing the peace, Ms. Pitts believed the Ban and Bar was no longer in effect. On September 14, 2023, believing the Ban and Bar was no longer

in effect, Ms. Pitts went to her daughter's school to deliver balloons for her birthday and was let inside the building. For this incident, Ms. Pitts was convicted of trespassing in violation of the Ban and Bar order, which was still in place and reinforced through her probation order. Ms. Pitts alleges the trespassing charge was in retaliation for filing an internal affairs complaint against the Omaha Police Department and Officer Potter.

**E. October 2024 School Board Meeting**

On October 14, 2024, Ms. Pitts and the Pitts Children attended an Elkhorn Public School board meeting ("October 2024 board meeting"). Ms. Pitts and the Pitts Children each signed up to speak for five minutes. Ms. Pitts did speak at the meeting, but the Pitts Children were denied the opportunity to speak at the meeting. After Ms. Pitts further requested the Pitts Children be given the opportunity to speak, Board President Parks directed their removal from the remainder of the meeting. As Ms. Pitts saw it, they were removed from the October 2024 board meeting, and the Pitts Children were not allowed to speak at the October 2024 board meeting, due to their views on masking.

Based on these allegations, Plaintiffs assert six causes of action against Defendants under 42 U.S.C. § 1983: 1) a violation of their First Amendment right to assembly; 2) retaliation for exercising their First Amendment rights; 3) a violation of due process; 4) violation of their right to equal protection; 5) "abuse of power;" and 6) retaliation against their exercise of freedom of religion.

**F. Procedural Background**

Defendants have moved to dismiss all of Plaintiffs' claims against them. The first group of Defendants filed a Motion to Dismiss on December 4, 2025. Filing No. 10. The second group of Defendants filed a Motion to Dismiss on December 22, 2025. Filing No.

21. And on January 8, 2026, the third group of Defendants filed a Motion to Dismiss. Filing No. 28.

Plaintiffs oppose the motions to dismiss and seek leave to file a Second Amended Complaint. Filing No. 27; Filing No. 34; Filing No. 41. The proposed Second Amended Complaint adds Brian Kempf as an additional defendant; withdraws the abuse of power claim; and seeks to add a new claim for an injunction to revoke or amend the Ban and Bar currently imposed on Ms. Pitts. Filing No. 34. Additionally, the proposed Second Amended Complaint contains additional factual assertions to support the claims and the new cause of action. *Id.* Defendants argue that the motion to amend should be denied as futile and the motions to dismiss should be granted. Filing No. 37; Filing No. 40.

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *See id.* (describing a "two-pronged approach" to evaluating such motions: First, a court must accept factual allegations and disregard legal conclusions; and then parse the factual allegations for facial plausibility). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**B. Motion for Leave to Amend**

Fed. R. Civ. P. 15 provides that the Court should "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a). Nevertheless, a party does not have an absolute right to amend, and "[a] district court may deny leave to amend if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (internal quotation and citation omitted). "[W]hen a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion." *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007).

**III. ANALYSIS**

The test for futility of the amendment is the same as the test that is applied when considering a motion to dismiss a complaint under Rule 12(b)(6). *See Zutz v. Nelson*,

601 F.3d 842, 850 (8th Cir. 2010). To survive a motion to dismiss, a complaint must plead sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. So, a proposed amended complaint that fails to state a plausible cause of action under the *Twombly* and *Iqbal* pleading standard should be denied as futile. *Id.* Accordingly, the Court will discuss whether the amendments in the proposed Second Amended Complaint are futile and whether each cause of action should be dismissed as to the various Defendants. The Court begins by addressing the official-capacity claims against Defendants. The Court will then address whether qualified immunity applies to the claims against Defendants. And finally, the Court will address the claims against the District, Board, and City.

**A. Dismissal for Vague Pleading**

As an initial matter, Defendants first argue Plaintiffs' proposed Second Amended Complaint must be denied as futile and dismissed because its "kitchen-sink" and "shot-gun" pleading style fails to put them on notice of which Defendants are alleged to have done what. *See, e.g., Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012) ("A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant."). While the Court agrees the Complaint is not a model of clarity, the facts alleged in the background section of the Complaint, and the court documents of which the Court takes judicial notice, are minimally adequate to permit the Court to assess whether Plaintiffs state a valid claim against each Defendant. The Court will not dismiss the Complaint on this basis.

**B. Official-Capacity Claims**

Plaintiffs first bring suit against Habrock in his official capacity as the superintendent of Elkhorn Public Schools; Gray in her official capacity as the Associate Superintendent of Elkhorn Public Schools; Sidders in her official capacity as the principal at Westridge Elementary School in the Elkhorn Public School District; Peterson in her official capacity as the principal at Spring Ridge Elementary in the Elkhorn Public School District; current and former Elkhorn Public School Board members Parks, Rogic-Gruefe, Vokt, Ringenberg, Burney, Shatel, and Wortman in their official capacities; and Potter in his official capacity as a police officer of the Omaha Police Department in the City of Omaha. Defendants argue these claims should be dismissed because "[i]t is well-settled that a suit against a governmental actor in his official capacity is treated as a suit against the government entity itself." Filing No. 12 at 16 (citing *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). Here, the official capacity of each non-entity defendant is as an official for either the Elkhorn Public School District, Elkhorn Public School Board, or the City of Omaha. And the Elkhorn Public School District, Elkhorn Public School Board, and City of Omaha are municipalities and are named in the suit. Because a suit against an official in their official capacity is really a suit against the governmental agency, the individual official-capacity claims "should be dismissed as redundant" because "the employing entity is also named." *King v. City of Crestwood, Missouri*, 899 F.3d 643, 650 (8th Cir. 2018). Plaintiffs appear to concede their official-capacity claims against Habrock, Gray, Sidders, Peterson, Parks, Rogic-Gruefe, Vokt, Ringenberg, Burney, Shatel, Wortman, and Potter, and these claims should be dismissed as redundant. Therefore, Plaintiffs' motion to amend the complaint as to these

Defendants in their official capacity is denied as futile, and Defendants' motions to dismiss these Defendants in their official capacity are granted.

Additionally, Plaintiffs' proposed Second Amended Complaint adds an additional defendant, Brian Kempf ("Kempf"), in his official capacity as the Director of School Safety and Security in the Elkhorn Public School District. The official capacity of Kempf is an official for the Elkhorn Public School District, and the Elkhorn Public School District is a municipality and is named in the suit. Therefore, for the same reasons discussed above, Plaintiffs' request to add Kempf in his official capacity is redundant and is also denied as futile.

**C. Individual-Capacity Claims**

A plaintiff may bring a § 1983 claim against a public official who, acting under color of the law, deprives a citizen of "any rights, privileges, or immunities secured by the Constitution and laws of the United States." 42 U.S.C. § 1983. Plaintiffs allege that Defendants Habrock, Gray, Sidders, Peterson, Parks, Rogic-Gruefe, Vokt, Ringenberg, Burney, Shatel, Wortman, and Potter—primarily through the issuance and enforcement of the Ban and Bar on Ms. Pitts, the Pitts Children's one-day suspensions for refusing to mask, and their removal from the October 2024 board meeting—violated their rights to freedom of speech and assembly, due process, and equal protection, and retaliated against them for exercising their First Amendment and Freedom of Religion rights. In Plaintiffs' proposed Second Amended Complaint (Filing No. 34-1), they withdraw the abuse of power claim but seek to add a new cause of action requesting an injunction to revoke or amend the Ban and Bar imposed on Ms. Pitts. Plaintiffs also add an additional Defendant, Brian Kempf.

Defendants argue they are entitled to qualified immunity on all of Plaintiffs' § 1983 claims. Filing No. 12; Filing No. 22; Filing No. 29; Filing No. 37; Filing No. 40. "Under the doctrine of qualified immunity, a court must dismiss a complaint against a government official in [their] individual capacity that fails to state a claim for violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). If the plaintiff fails to allege sufficient facts on either prong, then the official is entitled to qualified immunity. *See Waters v. Madson*, 921 F.3d 725, 735 (8th Cir. 2019) ("Qualified immunity is appropriate only if no reasonable factfinder could answer yes to both of these questions."). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Court will evaluate whether qualified immunity applies to each claim against Defendants.

**1. First Amendment Right to Assembly**

Ms. Pitts alleges two situations in which she was prevented from exercising her First Amendment right to assembly. Filing No. 34-1 at 11–13. First, Ms. Pitts alleges she was prevented from going on school property or to school events under the Ban and Bar letter issued on September 28, 2021, absent advanced 24-hour notice and permission by a school official. *Id.* Second, Ms. Pitts alleges that she and the Pitts Children were

removed from the October 2024 board meeting. *Id.* In both situations, Ms. Pitts fails to plausibly allege a constitutional violation, and even if she had, she is unable to show that any right was clearly established. Thus, the individually named Defendants in their individual capacity are entitled to qualified immunity.

The First Amendment prohibits the government from "abridging the freedom of speech, or of the press," and guarantees "the right of the people peaceably to assemble." U.S. Const. Amend. I. "The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental." *De Jonge v. State of Oregon*, 299 U.S. 353, 364 (1937). However, "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799–800 (1985).

"The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 44 (1983). The Eighth Circuit recognizes three broad categories of First Amendment forums. *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 334 (8th Cir. 2011). Those are the public forum, the limited or designated public forum, and the nonpublic forum. *Id.*

Ms. Pitts first alleges the Ban and Bar violates her First Amendment right to freedom of assembly. Public schools are generally considered nonpublic forums unless specifically opened up to indiscriminate use by the general public. *Hazelwood Sch. Dist.*

*v. Kuhlmeier*, 484 U.S. 260 (1988); *Embry v. Lewis*, 215 F.3d 884, 888 (8th Cir. 2000). Here, there are no allegations in the complaint (Filing No. 13) or the proposed amended complaint (Filing No. 34) that Defendants opened up the school for "indiscriminate use by the general public." So, the presumption stands that the school is a nonpublic forum.

"Access to a nonpublic forum can be restricted, provided the restrictions are reasonable and are not an effort to suppress opposing viewpoints." *Embry*, 215 F.3d at 889. Further, "school officials have broad discretion in restricting visitors on school property to protect the safety and welfare of the school children." *Id.*; *Goss v. Lopez*, 419 U.S. 565, 582–83 (1975) (a school official's determination of the existence of an ongoing threat of disruption to the academic process justifies immediately removal from school property).

Here, Ms. Pitts cannot establish a violation of her First Amendment rights based on the Ban and Bar. Ms. Pitts has no general First Amendment right to assemble on school property. Moreover, the Ban and Bar was a reasonable response to the disruption she caused (*see supra* I.B.)—simply requiring her to obtain advance permission before coming to school grounds. On the day leading up the Ban and Bar letter, Ms. Pitts disturbed the peace of Principal Sidders, attempted to enter the administrative building, was peering into windows, and triggered a lockdown of all District schools and buildings. She was criminally convicted of disturbance of the peace for her actions. The Eighth Circuit has confirmed that a "[s]chool's policy of requiring visitors to receive permission from the school before using the school property is a reasonable response to the school's concerns regarding safety and disruption." *Embry*, 215 F.3d at 889. Thus, the Ban and Bar imposed and enforced by Defendants did not infringe on any constitutional right.

Additionally, even if Ms. Pitts had some limited First Amendment assembly right, that right has not been clearly established under similar circumstances. Ms. Pitts provided no supporting case law or evidence to prove this right is clearly established. On the other hand, Defendants have provided ample case law showing many federal appeals courts have addressed the issue and confirm school officials are entitled to qualified immunity when barring a parent from school property for disruptive behavior. *See generally* Filing No. 12 at 14, *e.g., Cole v. Buchanan Cnty. Sch. Bd.*, 328 F. App'x 204, 210–12 (4th Cir. 2009) (noting "[a] school board's authority encompasses the authority to remove or bar from entry an individual who threatens the safety of students or staff, or who disrupts the orderliness of the educational process," and granting qualified immunity for a decision to ban plaintiff from school grounds). Therefore, Ms. Pitts has failed to allege the Ban and Bar violates her First Amendment right to freedom of assembly, and even if she had, she has not shown that any right was clearly established. The Defendants are entitled to qualified immunity.

Plaintiffs also allege that their First Amendment rights of assembly were violated when Ms. Pitts and the Pitts Children were removed from the October 2024 board meeting. Although school grounds themselves are nonpublic forums, a school board meeting is generally considered a limited public forum. *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 334–35 (8th Cir. 2011). A limited public forum may be "limited to use by certain groups or dedicated solely to the discussion of certain subjects," and the public entity "may impose restrictions on speech that are reasonable and viewpoint-neutral." *Id.* (quoting *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661 (2010)).

Here, Plaintiffs again have failed to establish a violation of their First Amendment rights against any of the Defendants. Although parents may generally have the right to attend school board meetings, it is well-settled that a school board may impose reasonable and viewpoint neutral restrictions for its meetings. *Christian Legal Soc.*, 561 U.S. 661. Plaintiffs do not plausibly allege that their removal from the October 2024 board meeting was based on a particular viewpoint. In Plaintiffs' Complaint (Filing No. 13), Plaintiffs merely assert that they were removed after Ms. Pitts spoke (about an unnamed topic) and "requested her children be given the opportunity to speak" (on an unnamed topic). Moreover, Plaintiffs do not remedy this issue in their proposed Second Amended Complaint (Filing No. 34), even though the issue was briefed extensively by Defendants in their briefing on the Motions to Dismiss and opposing the Motion to Amend. Additionally, provided that Ms. Pitts already spoke on the issue and had a history of disruptive behavior, Ms. Pitts's insistence that all six of her children speak could be viewed as disruptive to the school board's agenda and rules of decorum. *See, e.g.*, *White v. City of Norwalk*, 900 F.2d 1421, 1426 (9th Cir. 1990) ("A speaker may disrupt a Council meeting by speaking too long, by being unduly repetitious, or by extended discussion of irrelevancies."). Therefore, the removal of Plaintiffs from the October 2024 board meeting did not infringe on any constitutional right.

Additionally, even if Plaintiffs had some First Amendment assembly right, that right has not been clearly established under similar circumstances. Plaintiffs have not provided case law showing that a board allowing a disruptive parent (*see supra* I.B.) to speak at a board meeting but not allowing the parent's six children to also speak is unreasonable.

Plaintiffs have had ample opportunity to show whether this right is clearly established; Defendants raised the issue in their *first* motion to dismiss. Filing No. 12.

Therefore, Plaintiffs have also failed to allege that their First Amendment rights of assembly were violated when Ms. Pitts and the Pitts Children were removed from the October 2024 board meeting, and even if they had, they have not shown that any right was clearly established. The Defendants are entitled to qualified immunity.

**2. Retaliation Under the First Amendment**

Plaintiffs also allege a First Amendment retaliation claim. To establish a First Amendment retaliation claim, Plaintiffs must allege: (1) they engaged in protected First Amendment activity; (2) the Defendants took an adverse action that would chill a person of ordinary firmness from continuing in that protected activity; and (3) there was a "but-for causal connection" between the adverse action and the Defendant's retaliatory animus. *Nieters v. Holtan*, 83 F.4th 1099, 1110 (8th Cir. 2023).

Ms. Pitts alleges in the Amended Complaint (Filing No. 13) she engaged in two activities protected by the First Amendment: (1) "objecting to her children having to wear masks at school," (Filing No. 13 at 9, ¶ 120); and (2) "having opinionated signs in her yard" (*Id.* at ¶ 121). In Plaintiffs' proposed Second Amended Complaint (Filing No. 34-1), Ms. Pitts alleges she engaged in an additional activity protected by the First Amendment: "rendering opinions regarding masks in schools" (Filing No. 34-1 at 13, ¶ 142). Plaintiffs generally allege they were retaliated against due to their anti-masking views, asserting adverse actions including the Ban and Bar on Ms. Pitts for her actions on September 28, 2021; Officer Potter supplementing police reports to have her cited for her actions on September 28, 2021; the removal and denial of the Pitts Children to speak at the October

2024 board meeting; Ms. Pitts being ordered to take down her yard signs[2]; and the Pitts Children receiving one-day suspensions for refusing to mask and being denied hearings. Filing No. 13; Filing No. 34-1.

Ms. Pitts has failed to causally connect her "anti-masking views" to these actions. First, Ms. Pitts has failed to plausibly allege that her anti-masking views are the "but for" cause of the Ban and Bar. The Ban and Bar letter makes clear that the ban was issued "[a]s a result of the incident of threatening behavior toward the principal and substantial disruption in the office on Elkhorn Public Schools property" on Tuesday, September 28, 2021. Filing No. 11-2. Despite Plaintiff's conclusory allegations to the contrary, the Ban and Bar was not imposed due to the content of her speech, but because of her actions.

Ms. Pitts has also failed to plausibly allege that her anti-masking views are the "but for" cause of Plaintiffs' removal and denial of the Pitts Children to speak at the October 2024 board meeting. Ms. Pitts does not even allege the content of her speech at the October 2024 board meeting or otherwise show why her views were relevant. Additionally, Ms. Pitts has failed to plausibly allege that her anti-masking views are the "but for" cause of the Pitts Children receiving one-day suspensions for refusing to mask. And finally, Plaintiffs cite no cases and provide no argument showing why the denial of a hearing when none is legally or contractually due is an "adverse action" that would chill an ordinary person from continuing to exercise their First Amendment rights. As discussed below, the Pitts Children were not entitled to hearings on their short-term suspensions, nor has Ms. Pitts alleged or provided any authority showing she was legally entitled to one. *Cf. Revels v. Vincenz*, 382 F.3d 870, 877 (8th Cir. 2004) (plaintiffs must

[2] Plaintiffs assert Ms. Pitts was ordered to take down her yard signs at her residence by the Omaha Police Department, who is not a party to this case.

demonstrate qualification for or entitlement to denied privileges or procedures in order to establish adverse action). Thus, Plaintiffs have not shown a constitutional violation because Plaintiffs fail to allege facts showing a causal connection between their exercise of First Amendment rights and any subsequent injury. Defendants are entitled to qualified immunity.

Even if Plaintiffs had plausibly alleged a constitutional violation, they have not met their burden to establish that Defendants violated any clearly established right to access school property or attend school board meetings after causing a disruption. Nor have Plaintiffs shown Defendants violated any clearly established rights by giving the Pitts Children one-day suspensions each day they arrived at school without a mask, or that denial of a hearing when none is legally or contractually due is an "adverse action." Notably, Plaintiffs have not provided any case law to show that these rights were clearly established at the time of the violation. Defendants are entitled to qualified immunity.

**3. Due Process**

Next, Plaintiffs assert a due process claim. Plaintiffs allege due process violations based on Ms. Pitts's request for a hearing to rescind the Ban and Bar and the Pitts Children's ability to challenge their one-day suspensions. Plaintiffs do not specify whether they intended to assert a procedural or substantive due process violation but fail to state a plausible claim under either iteration of due process.

The due process clause of the Fourteenth Amendment prohibits state governments from depriving "any person of life, liberty or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. To make out a claim for procedural or substantive due process, Plaintiffs must sufficiently allege the deprivation of life, liberty,

or property. *See e.g.*, *Mickelson v. Cnty. of Ramsey*, 823 F.3d 918, 930 (8th Cir. 2016); *Krentz v. Robertson*, 228 F.3d 897, 902 (8th Cir. 2000).

To establish a violation of procedural due process, Plaintiffs must sufficiently allege 1) the deprivation of life, liberty, or property; and 2) sufficient process was not provided to protect that interest. *Krentz*, 228 F.3d at 902. Process usually comes in the form of notice and an appropriate opportunity to be heard. *Jones v. Flowers*, 547 U.S. 220, 223 (2006). The Court first addresses Ms. Pitts's request for a hearing to rescind the Ban and Bar, followed by the Pitts Children's requests for a hearing on their suspensions.

First, Ms. Pitts fails to allege the deprivation of any life, liberty, or property interest based on the Ban and Bar. Plaintiffs state in their brief (Filing No. 41 at 15) that "Ms. Pitts has a right to liberty and not be subject to overly broad and unreasonable ban and bar." However, Plaintiffs provide no case law to support this allegation. On the other hand, Defendants provide a wide range of cases discussing that parents do not have a right to control all aspects of their children's education, and this right does not extend to a parent's ability to have access to school property. *See* Filing No. 12 at 24–25; *e.g.*, *Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999); *Porter v. Duval Cnty. Sch. Bd.*, 406 F. App'x 460, 462 (11th Cir. 2010) ("While parents have a general due process right to direct their children's education without unreasonable interference by the states, . . . Porter has provided no legal support for the proposition that this right includes the right to access school premises."); *Justice v. Farley*, No. 5:11-CV-99-BR, 2012 WL 83945, at *1, 3 (E.D.N.C. Jan. 11, 2012) ("[A parent's general constitutional right] is limited in scope and does not include the unfettered right to access school premises . . .. Therefore, the court concludes that plaintiff was not deprived of a life, liberty, or property interest when he was

banned from the school campus") (citations omitted). Pitts has failed to allege the deprivation of a constitutionally protected interest and thus fails to state a due process claim against Defendants. Further, as shown above, Pitts has also failed to show any right was clearly established. The Defendants are entitled to qualified immunity.

Next, the Pitts Children fail to allege sufficient process was not provided when their requests were denied for a hearing on their suspensions. The Plaintiffs allege that their due process has been violated as the Pitts Children have a right to education. Thus, the Court will presume Plaintiffs assert a deprivation of their property interest in a public education. *See Goss*, 419 U.S. at 581 ("[A] student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause").

Even with a property interest, sufficient process was provided. In *Goss*, the U.S. Supreme Court held that students who are suspended for ten days or less are entitled to only rudimentary procedural safeguards. *Goss*, 419 U.S. at 581. That is, students who are subject to short suspensions must be given "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* (emphasis added). Informal discussions about the charges against the student are sufficient. *Id.*

Here, in Plaintiffs proposed Amended Complaint (Filing No. 34-1), Plaintiffs remove the use of the language "one-day," in an effort to categorize their suspensions as "long term." However, the Court finds Plaintiffs have already admitted the suspensions were subsequent one-day suspensions. *See* Filing No. 34-1 at 9, ¶ 82. Under the policies Plaintiffs cite and the case law, students who are subject to short suspensions (less than 10 days) need only be given "oral or written notice of the charges against him and, if he

denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975). The Pitts Children were aware of the requirement to wear a mask, repeatedly refused to do so, and were provided repeated written notice that their choice would result in a one-day suspension. The Complaint shows that Ms. Pitts made Defendants aware of her views on masking and disputed their decisions. For one-day suspensions, the Pitts Children were provided sufficient process and thus failed to state a procedural due process claim against Defendants. Further, Plaintiffs have failed to show any right was clearly established. The Defendants are entitled to qualified immunity

As with procedural due process, the possession of a protected life, liberty, or property interest is a condition precedent to a substantive-due-process claim. Accepting all facts in the proposed Second Amended Complaint as true and granting all reasonable inferences in favor of the Plaintiffs, the Court finds Plaintiffs fail to allege sufficient facts that would give rise to a protected life, liberty, or property interest.

However, even if Plaintiffs had alleged the violation of a protected interest, Plaintiffs fail to state a plausible substantive-due-process claim. "To state a substantive due process claim, [a plaintiff] must allege that a government action was 'sufficiently outrageous' or 'truly irrational, that is, something more than . . . arbitrary, capricious, or in violation of state law.'" *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 628 (8th Cir. 2001) (quoting *Anderson v. Douglas Cnty.*, 4 F.3d 574, 577 (8th Cir. 1993); *Riley v. St. Louis Cnty. of Mo.*, 153 F.3d 627, 631 (8th Cir. 1998)). Sufficiently outrageous or truly irrational is a high standard. *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 937 (8th Cir. 2012). To find a government action sufficiently outrageous requires

"violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power literally shocking to the conscience." *Christiansen*, 674 F.3d at 937–38 (quoting *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010)). The facts alleged do not allow the Court to reasonably infer any action taken by Defendants as sufficiently outrageous or truly irrational. Plaintiffs fail to plead a plausible substantive due process claim.

Thus, the proposed Second Amended Complaint contains insufficient facts to state a claim under procedural or substantive due process. The Defendants are entitled to qualified immunity.

**4. Equal Protection of the Laws**

Plaintiffs also assert an equal protection claim, alleging Defendants infringed upon their fundamental rights and liberty interests involving free assembly, speech, right to parent, and due process.

"The Equal Protection Clause of the Fourteenth Amendment commands that no [s]tate shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In evaluating an equal-protection claim, the first step is to examine "whether the plaintiff has demonstrated that [it] was treated differently than others who were similarly situated." *In re Kemp*, 894 F.3d 900, 909 (8th Cir. 2018). "When a State treats persons differently based on a suspect classification, such as race, the state action is subject to strict judicial scrutiny. Where no

suspect classification is involved, however, the State need only show that the differential treatment is rationally related to a legitimate state interest." *Exec. Air Taxi Corp. v. City of Bismarck, N.D.*, 518 F.3d 562, 566 (8th Cir. 2008).

Plaintiffs do not allege they fall within a suspect classification; they put forth a "class of one" claim. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (recognizing a "class of one" equal protection claim). To succeed on such a claim, Plaintiffs must allege facts that they were similarly situated to others who received preferential treatment, and those who were "alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in all material respects." *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) (quoting *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)). A class-of-one plaintiff must also "provide a specific and detailed account of the nature of the preferred treatment of the favored class." *Nolan v. Thompson*, 521 F.3d 983, 990 (8th Cir. 2008). Plaintiffs fail to identify, or even allude to, any other similarly situated parents or students to which they believe are identical in any material respect. Instead, Plaintiffs rely on generalities, such as asserting they are "not aware of any other individual being subjected to such an unreasonable ban and bar" and that they "have been treated differently than students who have been suspended more than 5 consecutive days at a time." Plaintiffs have failed to state an equal protection claim. Defendants are entitled to qualified immunity.

**5. Abuse of Power**

Plaintiffs asserted a claim for "Abuse of Power" in their Amended Complaint. Filing No. 13. Defendants argue that there is no independent cause of action for "abuse of power" under 42 U.S.C. § 1983. Filing No. 12 at 28. The Court does not need to address

this issue, because Plaintiffs voluntarily dismissed the "Abuse of Power" cause of action. Filing No. 27; Filing No. 34; Filing No. 41.

**6. Freedom of Religion**

Plaintiffs also assert a claim for "retaliation against freedom of religion," based on the denial of the Pitts Children's mask exemption requests. It is unclear whether Plaintiffs intended to assert a violation of the First Amendment's Free Exercise clause or a subsequent First Amendment retaliation claim but failed to state a claim under either iteration.

First, Plaintiffs fail to state a violation of the Free Exercise Clause. The Free Exercise Clause prevents governments from adopting policies that "compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma." *Mbonyunkiza v. Beasley*, 956 F.3d 1048, 1052 (8th Cir. 2020) (citations omitted). The Free Exercise clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *B.W.C. v. Williams*, 990 F.3d 614, 620 (8th Cir. 2021). Courts have routinely found that masking policies during COVID-19 were neutral and generally applied, and Plaintiffs do not allege any facts showing the masking policy here was designed for the purpose of suppressing religion. *See, e.g., Thomas v. Norris Sch. Dist. 160*, No. 8:22CV179, 2022 WL 20668245, at *7 (D. Neb. Nov. 23, 2022) (dismissing free exercise claim for a failure to show the COVID-19 masking policy was

not neutrally applied or used to suppress religion). Accordingly, the Court finds that Plaintiffs fail to state a claim under the Free Exercise Clause.

Plaintiffs also fail to state a subsequent First Amendment retaliation claim based on the Pitts Children's request for religious exemptions to the masking requirement. As discussed above, Plaintiffs must show that their request for a religious exemption was the but-for cause for any retaliatory acts. *See Nieters*, 83 F.4th at 1110 (requiring the protected activity be the but for cause for the adverse action or animus). Plaintiffs fail to make this showing; causation is missing. Plaintiffs' claim is conclusory and the Court finds Plaintiffs fail to state a claim. Defendants are entitled to qualified immunity.

**7. Injunction in Amended Complaint**

Finally, in Plaintiffs' proposed Second Amended Complaint (Filing No. 34), they assert a new claim seeking an injunction to revoke or amend the Ban and Bar. "It is well-settled that, '[N]o independent cause of action for injunction exists.'" *Affiliated Foods Midwest Coop., Inc. v. Supervalu Inc.*, No. 8:16CV465, 2017 WL 2222916, at *2 (D. Neb. May 19, 2017) (quoting *Plan Pros, Inc. v. Zych*, No. 8:08CV125, 2009 WL 928867, at *2 (D. Neb. Mar. 31, 2009)); *see also, Henke v. Arco Midcon, L.L.C.*, 750 F. Supp. 2d 1052, 1059–60 (E.D. Mo. 2010) ("Injunctive relief . . . is a remedy, not an independent cause of action."); *Christensen v. PennyMac Loan Servs., LLC*, 988 F. Supp. 2d 1036, 1046 (D. Minn. 2013) ("The claim for injunctive relief is a request for a remedy, not a separate cause of action."). Independent causes of action for "injunctive relief" are futile and cannot survive a motion to dismiss under Rule 12(b)(6). *Affiliated Foods Midwest Cooperative, Inc.*, 2017 WL 2222916, at *2. Because Plaintiffs seek an injunction to rescind the Ban and Bar in their various causes of action, adding this request as a separate count serves

no purpose. Therefore, the Court finds that the proposed Second Amended Complaint's claim for injunctive relief is futile because it would not survive a motion to dismiss under Rule 12(b)(6).

**D. Claims against the District, Board, and City of Omaha**

Plaintiffs assert the same § 1983 claims against the District, Board, and City as against Habrock, Gray, Sidders, Peterson, Parks, Rogic-Gruefe, Vokt, Ringenberg, Burney, Shatel, Wortman, and Potter, in their individual capacities. It is not surprising, then, that the District, Board, and City also argue Plaintiffs' claims against them should be dismissed for failure to state a claim (Fed. R. Civ. P. 12(b)(6)), and the proposed Second Amended Complaint should be denied as futile. While a municipality can be liable under § 1983, "a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 389 (8th Cir. 2007). A municipality may be liable under § 1983, however, if the constitutional violation was the result of: 1) an official municipal policy, 2) an unofficial custom, or 3) a deliberately indifferent failure to train or supervise. *See Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013).

As thoroughly addressed above, Plaintiffs failed to establish any constitutional violations arising out of the implementation or enforcement of the Ban and Bar on Ms. Pitts, the Pitts Children's one-day suspensions, and their removal from the October 2024 board meeting. Thus, Plaintiffs' claims against the District, Board, and City fail on that basis alone.

However, in the interest of completeness, the Court analyzes Plaintiffs' proposed Second Amended Complaint for allegations of a policy, custom, or a failure to train or

supervise and determines Plaintiffs fail to state a claim on this basis as well. Plaintiffs proposed Second Amended Complaint vaguely states that the actions and misconduct alleged under each claim are based on the policies and practices of the District, Board, and City. Filing No. 34-1. However, nowhere do Plaintiffs state what the policy or custom may have been that allegedly led to a violation of their constitutional rights for the Ban and Bar on Ms. Pitts, the Pitts Children's one-day suspensions, or their removal from the October 2024 board meeting. Plaintiffs also fail to allege any facts to support a conclusion that the District, Board, or City failed to train or supervise its employees. For these reasons, the Court finds that Plaintiffs' § 1983 claims against the District, Board, and City are futile and must be dismissed.

## IV. CONCLUSION

Plaintiffs asserted several § 1983 claims against the Defendants for violating their constitutional rights through the implementation or enforcement of the Ban and Bar on Ms. Pitts, the Pitts Children's one-day suspensions, and their removal from the October 2024 board meeting. As fully set forth above, the claims against Habrock, Gray, Sidders, Peterson, Parks, Rogic-Gruefe, Vokt, Ringenberg, Burney, Shatel, Wortman, and Potter in their official capacities are dismissed as redundant. Habrock, Gray, Sidders, Peterson, Parks, Rogic-Gruefe, Vokt, Ringenberg, Burney, Shatel, Wortman, and Potter are entitled to qualified immunity on all claims brought against them in their individual capacities. The claims against the District, Board, and City must also be dismissed because Plaintiffs have failed to allege any actionable constitutional violations. Accordingly, the Plaintiffs' motion to amend is denied as futile and the Defendants' motions to dismiss are granted.

IT IS ORDERED:

1. Plaintiffs' motion to amend, Filing No. 34, is denied as futile.
2. Defendants' motions to dismiss, Filing No. 10; Filing No. 21; Filing No. 28, are granted. The case is dismissed.
3. A separate judgment will be entered in accordance with this Memorandum and Order.

Dated this 29th day of September, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge